AO 91 (Rev. 11/11) Criminal Complaint      AUSA Georgia N. Alexakis (312) 353-8897

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | CASE NUMBER: |
|---|---|
| v. | |
| JIMMIE GRANT | 16CR 769 |

**CRIMINAL COMPLAINT** MAGISTRATE JUDGE ROWLAND

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

From on or about November 23, 2016, to on or about November 25, 2016, at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | possession with intent to distribute a controlled substance, namely, cocaine, in violation of Title 21, United States Code, Section 841(a)(1) |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

_____
ARNOLD MARTINEZ
Investigator, Drug Enforcement Administration (DEA)

Sworn to before me and signed in my presence.

Date: November 28, 2016

_____
*Judge's signature*

City and state: Chicago, Illinois

MARY M. ROWLAND, U.S. Magistrate Judge
*Printed name and Title*

**FILED**
NOV 28 2016
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT  
NORTHERN DISTRICT OF ILLINOIS } ss

## AFFIDAVIT

I, ARNOLD MARTINEZ, being duly sworn, state as follows:

1. I am an Investigator with the Drug Enforcement Administration ("DEA"), and have been so employed in this role for one year. I simultaneously serve as an Amtrak police officer, and have served in that role for three years. Previously, I was an officer with the Chicago Police Department for 30 years. My current responsibilities include the investigation of narcotics trafficking offenses.

2. This affidavit is submitted in support of a criminal complaint alleging that JIMMIE GRANT has violated Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging GRANT with possession with intent to distribute a controlled substance, namely, cocaine, in violation of Title 21, United States Code, Section 841(a)(1), I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge and information provided to me by other law enforcement agents.

4. On or about November 23, 2016, Amtrak law enforcement personnel in Los Angeles, California, informed me that GRANT had boarded Amtrak Train No. 4

on that day, at approximately 6 p.m. PST,[1] and was traveling from Los Angeles to New York, via Chicago's Union Station. Amtrak law enforcement personnel regarded GRANT's travel activity as suspicious because he had purchased his ticket for approximately $455 in cash on the same day as his departure from Los Angeles. Based on my training and experience as well as the training and experience of other law enforcement personnel with whom I have spoken, I believe that narcotics traffickers and couriers frequently purchase tickets for travel in cash and do so very close to their time of departure in an attempt to avoid detection by law enforcement.

     5.    On or about November 25, 2016, at approximately 1:36 p.m., the Amtrak conductor on Amtrak Train No. 4 contacted Amtrak law enforcement personnel at Chicago's Union Station. The conductor reported an incident on Train No. 4 that had taken place at approximately 1 p.m. that same day. According to the conductor, GRANT had verbally threatened two other passengers, Passenger A and Passenger B. Fearing that GRANT would physically harm them, Passenger A and Passenger B asked to have their seats re-assigned. Based on this incident, the Amtrak conductor requested that Amtrak Police officials be present on the platform when Train No. 4 arrived at Chicago's Union Station in the event there was another incident between GRANT and Passenger A and Passenger B. The Amtrak conductor provided a physical description of GRANT.

     6.    On or about November 25, 2016, at approximately 2:48 p.m., working with an Amtrak detective, I located GRANT on the platform as he departed Train

---

[1] All other times in this Affidavit are in CST.

2

No. 4. The Amtrak detective and I stopped GRANT and asked him if he would speak with me regarding the reported incident with Passenger A and Passenger B. The Amtrak detective and I were dressed in plain clothes and were not displaying guns. GRANT agreed to answer our questions.

7. In response to subsequent questions from law enforcement, GRANT said he was not traveling with weapons, prescription medications, other narcotics, and large amounts of currency. GRANT's only luggage was a backpack, which he was carrying while he answered questions from law enforcement. I asked GRANT whether I could search his backpack to confirm that it contained no weapons, prescription medications, other narcotics, or large amounts of currency. GRANT verbally consented to a search of his backpack and handed his backpack to me.

8. At approximately the same time that GRANT was answering questions concerning the contents of his backpack, an Amtrak police officer approached with a narcotics-sniffing canine, Gander. Gander is trained and certified to detect the odor of cocaine, heroin, methamphetamine, and marijuana. More specifically, Gander is trained to alert to these controlled substances by sitting and staring at the source of the odor. Gander was last certified on or about February 17, 2016, by the state of Illinois. On or about November 25, 2016, at approximately 2:57 p.m., after sniffing GRANT's backpack, Gander positively alerted to the presence of a controlled substance inside the backpack.

9. I searched GRANT's backpack. I found a few items of clothing, some miscellaneous papers, and a white plastic bag. Inside the white plastic bag, I found

two brick-like objects wrapped in tan tape and vacuum-sealed in clear plastic bags. I also found that a soap-like material coated the inside of GRANT's backpack. Based on my training and experience as well as the training and experience of other law enforcement personnel with whom I have spoken, I believe that narcotics traffickers and couriers frequently package narcotics in brick-like shapes, wrap those brick-like shapes in tape and vacuum-sealed plastic, and use soap and dryer sheets to conceal the odor of narcotics from law enforcement.

10. Each brick-like object weighed approximately 1 kilogram. The first brick-like object contained a white, compressed powdery substance, which field-tested positive for the presence of cocaine. The second brick-like object contained a white powdery substance with a pasty, rather than compressed, consistency. Law enforcement conducted multiple field tests of the substance contained in the second brick-like object. Those field tests produced inconclusive results. More specifically, the first four field tests came back negative while the fifth field test indicated the presence of cocaine.

11. On or about November 25, 2016, at approximately 5:13 p.m., GRANT was read his *Miranda* rights and waived those rights in writing. GRANT told law enforcement that he believed the brick-like objects in his backpack contained pills, and not cocaine or heroin.

12. According to law enforcement records, GRANT was convicted in 2006, 2003, and 1989 for felony narcotics-related offenses.

FURTHER AFFIANT SAYETH NOT.

*[signature]*
ARNOLD MARTINEZ
Investigator, Drug Enforcement
Administration

SUBSCRIBED AND SWORN to before me on November 28, 2016.

*[signature]*
MARY M. ROWLAND
United States Magistrate Judge

5